# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:07-CR-00208-01 |
| v. | (Judge Brann) |
| CHESNEY JONES, | |
| Defendant. | |

## MEMORANDUM OPINION

### JUNE 8, 2021

Currently pending before the Court is Chesney Jones' emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Jones contends that she merits compassionate release due to the COVID-19 pandemic and her particular susceptibility to that virus, as well as necessary surgery that the Bureau of Prisons (BOP) is allegedly refusing to provide her.[2] The Government opposes the motion on the grounds that Jones has failed to demonstrate extraordinary or compelling reasons to grant release, she has been fully vaccinated against the virus, and the relevant 18 U.S.C. § 3553(a) factors militate against granting release.[3]

## I.   BACKGROUND

In 2008, Jones was charged in a superseding indictment with possession with the intent to distribute 50 grams or more of cocaine base and 5 kilograms or more of

---

[1]   Doc. 247.
[2]   *Id.* at 4-5.
[3]   Doc. 249.

cocaine, in violation of 21 U.S.C. § 841(a)(1), traveling in interstate commerce to promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3), making false statements, in violation of 18 U.S.C. § 1001, and conspiracy to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846.[4] Following a jury trial, Jones was convicted of all four counts.[5]

A Presentence Report (PSR) was thereafter prepared. The PSR noted that Jones had been distributing cocaine and cocaine base in the Harrisburg, Pennsylvania area for approximately one year and that, at the time of her arrest, she and another individual had brought fifteen kilograms of cocaine to Harrisburg for distribution.[6] Jones admitted to law enforcement that she would often provide her coconspirator with multiple kilogram shipments of cocaine, and would also personally sell one-kilogram quantities of cocaine base.[7] During the subsequent police investigation, Jones agreed to cooperate with law enforcement but then, during a meeting with the coconspirator that law enforcement monitored, Jones warned her coconspirator that she was cooperating with law enforcement.[8] Moreover, during her criminal trial Jones testified falsely regarding the events surrounding her arrest.[9]

---

[4] Doc. 69.
[5] Doc. 89.
[6] PSR at 4-5.
[7] *Id.* at 5.
[8] *Id.* at 5-6.
[9] *Id.* at 6.

The PSR calculated a base offense level of 38,[10] and calculated a criminal history category VI based upon numerous prior convictions, including convictions for possession with intent to distribute cocaine, possession with intent to distribute cocaine base, aggravated assault and resisting arrest, criminal mischief and theft by unlawful taking, false reports, and embezzlement.[11] Jones' criminal history category VI, when combined with an offense level of 38, resulted in a Sentencing Guidelines range of 360 months to life imprisonment.[12] The Court ultimately imposed a sentence of 300 months' imprisonment.[13]

In her motion for compassionate release, Jones asserts that she suffers from several health issues, most notably diabetes, high blood pressure, and obesity, all of which place her at a higher risk of serious illness or death should she contract COVID-19.[14] She also asserts that she is in urgent need of medical surgery, which the BOP refuses to provide due to the cost of the surgery.[15] The Government responds that Jones' health conditions do not render her more susceptible to serious illness or death from COVID-19 given her age, the low infection rate at her place of confinement, and the fact that she has been fully vaccinated against COVID-19.[16] In any event, the Government contends that the relevant § 3553(a) sentencing factors

---

[10] *Id.* at 7-8.
[11] *Id.* at 9-11.
[12] *Id.* at 11, 15.
[13] Doc. 107.
[14] Doc. 247 at 4.
[15] *Id.* at 4-5.
[16] Doc. 249 at 9-14.

and the danger to that Jones presents to the public weigh against granting this motion.[17] This matter is ripe for disposition and, for the following reasons, Jones' motion will be denied.

## II.  DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[18] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies[19] and if, as relevant here, "extraordinary and compelling reasons warrant such a reduction."[20] Courts should also consider the relevant § 3553(a) sentencing factors in determining whether compassionate release is appropriate.[21]

Congress has not defined the term "extraordinary and compelling." The Sentencing Guidelines define the term to include a terminal illness, or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[22] This definition is not, however, authoritative, as "[t]he

---

[17] *Id.* at 14-16.
[18] *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[19] There is no dispute that Jones has exhausted her administrative remedies. Doc. 249 at 5.
[20] 18 U.S.C. § 3582(c)(1)(A)(i).
[21] U.S. Sentencing Guidelines Manual § 1B1.13.
[22] *Id.* § 1B1.13, cmt. n.1(A).

4

[Sentencing] Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated."[23] Thus, while "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, . . . it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."[24] "The burden rests with the defendant to show that a reduction in sentence is proper."[25]

As an initial matter, the Court notes that the existence of COVID-19 cannot alone justify compassionate release. As the United States Court of Appeals for the Third Circuit has explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.[26]

Consequently, "to demonstrate extraordinary and compelling reasons for compassionate release, movants must show that they are particularly susceptible to

---

[23] *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020).
[24] *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).
[25] *United States v. Singh*, __ F. Supp. 3d __, __, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (internal quotation marks omitted).
[26] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

serious illness or death should they contract COVID-19, usually as a result of one or more underlying comorbidities."[27]

The Court concludes that Jones has not sustained her burden of establishing that extraordinary and compelling reasons weigh in favor of granting compassionate release, despite the existence of underlying medical conditions that may increase her vulnerability to COVID-19. For example, the Centers for Disease Control and Prevention lists diabetes and obesity as conditions that increase an individual's risk of serious complications from COVID-19.[28] The existence of these conditions would ordinarily lead the Court to conclude that Jones is at an increased risk of serious illness or death from COVID-19 and, therefore, that extraordinary and compelling reasons permit the Court to grant compassionate release.

Nevertheless, the Court concludes that Jones' recent vaccination mitigates her risk from COVID-19 to such an extent that COVID-19, in combination with Jones' underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release. The Government notes that Jones is now fully vaccinated against COVID-19.[29] Although vaccines are not one hundred percent effective, the CDC states that "[c]urrently authorized vaccines in the United States

---

[27] *Singh*, 2021 WL 928740, at *2.
[28] *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019, People at Increased Risk, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).
[29] Doc. 249 at 1-2.

are highly effective at protecting vaccinated people against symptomatic and severe COVID-19."[30] Vaccines are particularly effective at preventing "severe illness and death."[31]

Although Jones' vaccination does not establish that she is entirely protected from COVID-19, that vaccination does provide significant protection from serious illness or death. To that end, the CDC currently recommends that fully vaccinated individuals may resume any and all activities without wearing a mask or physically distancing, except where required by laws, regulations, or workplace guidance.[32] The sum of the available data demonstrates to the Court that, as a result of her vaccination, Jones now has significant protection against serious illness or death should she contract COVID-19 and, accordingly, the Court concludes that Jones has not demonstrated that her underlying conditions—in combination with the possibility of a COVID-19 infection—provide extraordinary and compelling reasons to grant her motion for compassionate release.[33]

---

[30] Centers for Disease Control and Prevention, *Coronavirus Disease 2019, Vaccines, Interim Public Health Recommendation for Fully Vaccinated People*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (updated May 28, 2021).

[31] Centers for Disease Control and Prevention, *Coronavirus Disease 2019, Vaccines, When You've Been Fully Vaccinated*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (updated May 16, 2021).

[32] Centers for Disease Control and Prevention, *Coronavirus Disease 2019, Vaccines, When You've Been Fully Vaccinated*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (updated May 16, 2021).

[33] *See Singh*, 2021 WL 928740, at *3 & n.36 (reaching same conclusion and collecting cases).

Consequently, Jones' motion will be denied.[34] Jones may file an additional motion for compassionate release should future evidence demonstrate that COVID-19 vaccines are less effective at preventing serious illness or death from COVID-19 than is currently understood, such that Jones remains at a substantial risk of serious illness or death from a COVID-19 infection.

## III.  CONCLUSION

For the foregoing reasons, Jones' motion for compassionate release will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[34]  To the extent that Jones' asserts her necessary surgery independently justifies compassionate release, this is not a proper basis upon which to grant compassionate release. *See* USSG § 1B1.13, cmt. n.1(A). Rather, to the extent that Jones believes the BOP is improperly denying needed medical surgery, she should pursue relief by filing a civil rights action against the responsible parties.